## Carson Estate

*Jess D. Costa,* for accountant.

*George B. Stegenga* and *Paul P. Posa,* for legatees.

*Larry F. Knepp,* for heirs of Margaret Waite.

SIMMONS, *J.,* August 12, 1976 — This matter comes before the court via exceptions filed to an

adjudication and decree entered by this court on May 13, 1976, which exceptions were as follows:

"And now comes Larry F. Knepp, Esquire, Attorney for M. Jean Henk, Mary A. Florida and John W. Waite, children of Margaret W. Waite; Ruth McVicker and Alice Wilson, nieces of Grace W. Carson, and takes exception to the Adjudication and Decree of May 13, 1976, and in particular to Paragraph 6 thereof wherein the balance of Testatrix' estate was divided into four (4) equal parts, inasmuch as we believe it should be divided into seven (7) equal parts with one part to be distributed to the children of Margaret W. Waite, one part to Ruth McVicker and one part to Alice Wilson."

Testatrix died leaving both personalty, including money, and realty.

The court has before it three different documents for its consideration. First a will of testatrix dated October 11, 1960, wherein testatrix, after making certain bequests of personalty and other household items, specified in paragraph 16 of the said will as follows:

"All the rest, residue and remainder of my estate I give, devise and bequeath as follows: One-half (½) thereof to my sister, Mary W. Neill; one eighth (⅛) thereof to my niece, Iva Ayres Ramsey; one-eighth (⅛) thereof to my niece, Sarah N. Myers; one-eighth (⅛) thereof to my nephew, Frank Neill; and one-eighth (⅛) thereof to my nephew, Judson Neill; provided that if my sister, Mary W. Neill, shall not survive me, then and in that event the share and interest herein devised and/or bequeathed to her shall go to her children, share and share alike."

Mary W. Neill, who is mentioned in paragraph 16 and who is a sister of testatrix, predeceased her.

The second document that is before the court is a codicil dated January 23, 1967, but said document is of no moment inasmuch as it only purported to change the appointment of executors by making both Frank Neill and Judson Neill, coexecutors of testatrix last will.

The next document consisting of three hand-written pages of testatrix (Exhibit "B") must be construed along with the foregoing testamentary papers submitted to the court in his case. Paragraphs 2 and 3 in Exhibit "B" dated August 26, 1968, are in need of interpretation.

Paragraph 2 reads:

"To my nieces & nephews — Iva Ramsey, Frank Neill, Sara Myers & Judson Neill equal sum of money left."

Paragraph 3 reads:

"To Hill Church & Davidson Methodist Church $500.00 each. If over $10,000 is left divide on % basis to nieces & nephews."

Several issues have arisen as a result of the execution of the above three papers. First, did the paper of August 26, 1968, captioned "Last Will and Testament of Grace W. Carson" revoke the will of 1960 and the codicil of 1967, or is the August 26, 1968, paper only a partial revocation of the 1960 will and codicil of 1967?

Further, in considering the question of partial revocation by both paragraphs 2 and 3 of the will of August 26, 1968, an additional question arises as to what testatrix meant when she used the words, "equal sum of money left" in paragraph 2 and in paragraph 3 when she said "if over $10,000 is left,

divide on percentage basis to nieces and nephews." Does the reference to "money left" refer to all of testatrix personalty even including items other than money and does said reference to "money left" also include realty even though realty is not mentioned in the 1968 document?

Next, did testatrix eliminate the name Margaret Waite as a beneficiary of her will by scratching out her name in paragraph 2 of the August 26, 1968, document?

As to paragraph 3 of the 1968 document, there is a question as to whether said document refers to the same nieces and nephews set forth in paragraph 2 as a class or whether said paragraph refers to all of testatrix' nieces and nephews even though the same were not mentioned in paragraph 2.

Before the court will discuss the issues hereinabove referred to, it is well to point out that it is undisputed that the will of 1960 and the codicil thereto were properly executed and there is no question at all in this case involving lack of capacity or undue influence. As to the document dated August 26, 1968, it is uncontested that the document consisting of three pages was in the handwriting of testatrix. It is further uncontested that testatrix crossed out the name of Margaret Waite in her own handwriting and the authenticity of the document of August 26, 1968, is not in question.

The first issue, as above stated, was whether the paper of 1968 fully revoked the paper of 1960 and its accompanying codicil or whether the paper of 1968 is only a partial revocation of the will and codicil.

The court is of the opinion that there is only a partial revocation of the will of 1960. After some extensive research in regard to the meaning of the

words "equal sum of money left" and the words "if over $10,000 is left," the court is of the opinion that said words are, in effect, a residuary clause in the last will and testament of August 26, 1968, but that said clauses only pass the personal property and money of decedent and do not pass testatrix' real property. It is true that the Supreme Court in Ingram's Estate., 315 Pa. 293, 172 Atl. 662 (1934), said, at page 295:

" . . . under our cases the word 'money' when used in a will, is to be construed in the broad sense of wealth or property, instead of in its narrow sense as cash, *only where the context of the will and the circumstances surrounding its execution* require that it be so interpreted *in order to give effect to the testator's intention.*" See also Conlin Estate, 388 Pa. 483, 489, 131 A. 2d 117 (1957).

This court, at no place in the precedents, discovered a Pennsylvania case that construed these words concerning "money left" to include real estate. See Edwards Estate, 407 Pa. 512, 180 A. 2d 590 (1926).

Inasmuch as the document of 1968 does not at any place refer to a disposition of testatrix' real estate, it is clear that the will of 1960, paragraph 16, which includes "all the rest, residue and remainder" of testatrix' estate, has not been completely revoked.

" 'If the dispositive provisions of the later will are inconsistent with the dispositive provisions of the earlier will, the later will revokes the earlier will just so far as it is inconsistent with it and no farther.' " Turner Estate, 408 Pa. 530, 538, 184 A. 2d 896 (1962), quoting a Bowe-Parker, Page on Wills, §21.43, p. 411.

The next question for discussion is whether, testatrix eliminated Margaret Waite as a beneficiary

under her will by scratching out her name in paragraph 2 of the August 26, 1968, document. Under the factual circumstances of this case, wherein it is not disputed that Margaret Waite's name was eliminated by testatrix, it is certain that the cancellation of Margaret Waite's name was an act of decedent which was effected by drawing lines through her name. See Act of June 30, 1972, P. L. 508, 20 P. S. §2505 (3). See also Okowitz Will, 403 Pa. 82, 169 A. 2d 84 (1961).

It is clear then that Margaret Waite's name had been cancelled from that will by testatrix and, as a consequence, the will has been amended accordingly by testatrix. Even though Margaret Waite had predeceased testatrix, the elimination of her name by testatrix would prevent the application of any anti-lapse statute that might have preserved the gift for Margaret Waite's surviving children.

The next question for consideration is whether or not the reference to nieces and nephews in paragraph 2 of the 1968 document is the same class referred to in paragraph 3 of the same document. It is this court's opinion from reading the will of 1960 in conjunction with the will of 1968 that the nieces and nephews referred to by testatrix in all relevant portions of her two wills were Iva Ramsey, Margaret Waite, Frank Neill, Sara Myers, and Judson Neill. The only niece that was mentioned in the 1968 will that was different from the nieces and nephews mentioned in the 1960 will was Margaret Waite, whose name had been obliterated by testatrix in the 1968 will. (Margaret Waite's name was not mentioned in the 1960 will.) It is clear that decedent desired only nephews and nieces who were specifically named in her wills to receive her property, for, had it been otherwise, it would have been a simple matter for testatrix to

have stated in paragraph 3 of the 1968 will and in paragraph 16 of the 1960 will, the words "other nieces and nephews" or "all of my nieces and nephews." It is clear to this court that the reference to nieces and nephews in paragraph 3 of the 1968 will was a clear reference to the same nieces and nephews that she had enumerated in paragraph 2 of the 1968 document with exception of Margaret Waite, and also in paragraph 16 of the 1960 document.

The fact that testatrix had also enumerated the same four persons who were nieces and nephews in paragraph 16 of her will of 1960 as she had done in her will of 1968 in paragraph 2 with the exception of Margaret Waite whose name had been obliterated, gives credence to the fact that testatrix, at the time of her death intended only to give her property to the specifically named four persons who were mentioned in both documents. In addition, in paragraph 2 of the 1968 document, testatrix was referring to the money that she had left, and in paragraph 3 of the same document she was still concerned with the same money that was left and in the context of her thinking it is clear she was referring to the same specifically named nieces and nephews, with the exception of Margaret Waite.

The court, on reflection, has made a mistake in paragraph 6 of the Adjudication and decree entered on May 13, 1976, in regard to this matter. It is clear now to the court that the balance of the money and other personal property remaining in testatrix' estate should be distributed somewhat differently from the balance of the real estate and/or the proceeds thereof that remains in testatrix' estate.

Further, an additional problem arises as to the

order of abatement of the money and other personalty which is distributed in accordance with the 1968 will and the real estate money which is distributed under the 1960 will. In other words, should the expenses of administration come out of the personalty or out of the proceeds of the realty?

We have, in effect, two residuary clauses: One (1968 will), pertaining to the money which is distributable to four named persons in equal shares and other personalty specifically distributed to named persons, and one pertaining to all of testatrix' estate, including realty which is distributable under the 1960 will, as follows: ⅛ to Iva Ramsey and the remaining ⅞ to be divided between the children of Mary W. Neill, namely, Frank Neill, Sara N. Myers, and Judson Neill. (The share of the last named three persons increased under this clause due to the death of Mary W. Neill prior to the death of testatrix.)

Under paragraph 16 of the 1960 will, each one of the children of Mary W. Neill were to take Mary W. Neill's ½ of the total estate in equal shares if she, Mary W. Neill, failed to survive testatrix, and, in addition, each of said children, under paragraph 16 of the 1960 will, were given ⅛ of the residue of testatrix' estate directly, whether Mary W. Neill survived testatrix or not.

It follows, therefore, that Sara N. Myers would receive 7/24 of the residue, Frank Neill would receive 7/24 of the residue, and Judson Neill would likewise receive 7/24 of the residue, pertaining only to the real property.

20 P. S. §3541 (a), (6), Decedents, Estates and Fiduciaries Code, is not very helpful in this case. If merely states that property divided or bequeathed in a residuary clause is only sixth in order of prior-

ity. In this case, in the 1968 will, paragraphs 2 and 3 are, in effect, a residuary clause of the personalty and paragraph 16 under the 1960 will is, in effect, a residuary clause of the realty.

Inasmuch as the Decedents, Estates and Fiduciaries Code section 3541(b), in effect, makes the residuary clause of the personalty a demonstrative legacy (1968 will), it is the opinion of this court that the expenses of administration, including the inheritance tax, should be paid out of the proceeds of the realty, except that the payment of decedent's existing debts as of the date of her death, her funeral expenses and the expenses of her last illness referred to in paragraph 1 in the will of 1968, which was the final pronouncement of testatrix, must be paid out of testatrix' personalty.

However, as indicated, the actual expenses of administration and inheritance tax should be paid out of the realty, since the will of 1968 is silent on this point.

Wherefore, the court will make the following amended adjudication and decree:

And now, this 12th day of August, 1976, the Estate of Grace W. Carson shall be distributed as follows:

1. All of her debts owed by her immediately before her death, her funeral expenses and expenses of her last illness shall be paid out of her personal property, including her cash.

2. All of the Federal estate taxes, inheritance taxes, and other expenses of the administration of her estate, including the executor's fee and the attorney's fee shall be payable from the proceeds of the real estate.

3. The following items shall not be sold but shall be distributed . . .

4. $500 shall be distributed to the Hill Church.

5. $500 shall be distributed to the Davidson Methodist Church.

6. Any cash or proceeds from the sale of personalty remaining shall be distributed in four equal shares to Iva Ramsey, Frank Neill, Sara Myers and Judson Neill.

7. Any proceeds from the sale of realty and/or any realty left in testatrix' estate shall be divided as follows: 3/24 shall be distributed to Iva Ramsey; 7/24 shall be distributed to Frank Neill; 7/24 shall be distributed to Sara Myers; and 7/24 shall be distributed to Judson Neill.

This is a final order and is not subject to further consideration in this court. Any future proceedings must be in the Supreme Court of Pennsylvania.